UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| MARC WATERMAN,<br><br>           Plaintiff,<br><br>   v.<br><br>TC PIPELINES, LP, STANLEY GRAHAM CHAPMAN, III, NATHAN BROWN, NADINE E. BERGE, JACK STARK, MALYN K. MALQUIST, PEGGY A. HEEG, GLORIA HARTL, and TC PIPELINES GP, INC.,<br><br>           Defendants. | Case No. _____<br><br>JURY TRIAL DEMANDED |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. On December 14, 2020, TC PipeLines, LP's ("TC PipeLines" or the "Partnership") Board of Directors (the "Board" or "Individual Defendants") caused the Partnership to enter into an agreement and plan of merger (the "Merger Agreement") with TC PipeLines GP, Inc. (the "General Partner"), TC Energy Corporation ("TC Energy"), TransCan Northern Ltd. ("TransCan Northern"), TransCanada PipeLine USA Ltd. ("TC PipeLine USA"), and TCP Merger Sub, LLC ("Merger Sub").

2. Pursuant to the terms of the Merger Agreement, among other things: (i) Merger Sub will merge with and into TC PipeLines, with TC PipeLines surviving as a wholly-owned subsidiary of TC Energy; and (ii) TC PipeLines' unitholders will receive 0.70 shares of TC Energy common

stock for each common unit of TC PipeLines they own (the "Proposed Transaction").

3. On January 26, 2021, defendants filed a proxy statement (the "Proxy Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4. The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of TC PipeLines common units.

9. Defendant TC PipeLines is a Delaware limited partnership and a party to the Merger Agreement. TC PipeLines' common units are traded on the NYSE under the ticker symbol

"TCP."

10. Defendant Stanley Graham Chapman, III ("Chapman") is Chairman of the Board of the General Partner. Chapman also serves as Executive Vice-President and President of U.S. and Mexico Natural Gas Pipelines of TC Energy.

11. Defendant Nathan Brown ("Brown") is President and a director of the General Partner. Brown also serves as Vice President of U.S. Natural Gas Pipelines Financial Services of TC Energy.

12. Defendant Nadine E. Berge ("Berge") is a director of the General Partner. Berge also serves as Director, Corporate Compliance and Legal Operations of TC Energy.

13. Defendant Jack Stark is a director of the General Partner.

14. Defendant Malyn K. Malquist is a director of the General Partner.

15. Defendant Peggy A. Heeg is a director of the General Partner.

16. Defendant Gloria Hartl ("Hartl") is a director of the General Partner. Hartl also serves as Vice President, Risk Management of TC Energy.

17. The defendants identified in paragraphs 10 through 16 are collectively referred to herein as the "Individual Defendants."

18. Defendant General Partner is a Delaware corporation, the general partner of TC PipeLines, and a party to the Merger Agreement.

## SUBSTANTIVE ALLEGATIONS

### *Background of the Partnership and the Proposed Transaction*

19. TC PipeLines has interests in eight federally regulated United States interstate natural gas pipelines which serve markets in the Western, Midwestern, and Northeastern United States.

3

20. On December 14, 2020, TC PipeLines's Board caused the Partnership to enter into the Merger Agreement.

21. Pursuant to the terms of the Merger Agreement, among other things: (i) Merger Sub will merge with and into TC PipeLines, with TC PipeLines surviving as a wholly-owned subsidiary of TC Energy; and (ii) TC PipeLines' unitholders will receive 0.70 shares of TC Energy common stock for each common unit of TC PipeLines they own.

22. According to the press release announcing the Proposed Transaction:

> TC PipeLines, LP (NYSE: TCP) (TCP or the Partnership) today announced it has entered into a definitive agreement and plan of merger pursuant to which TC Energy Corporation (TSX, NYSE: TRP) (TC Energy) will acquire all the outstanding common units of TCP not beneficially owned by TC Energy or its affiliates in exchange for TC Energy common shares. Pursuant to the agreement, TCP common unitholders would receive 0.70 common shares of TC Energy for each issued and outstanding publicly-held TCP common unit. This represents a 19.5 per cent premium to the TCP closing price before the original offer as of October 2, 2020.
>
> The conflicts committee, composed of independent directors of the Partnership's general partner, after consultation with its independent legal and financial advisors, unanimously approved the merger agreement and determined it to be in the best interests of the Partnership and its unaffiliated unitholders. Subsequently, the board of directors of the Partnership's general partner approved the merger agreement and determined it to be fair and reasonable and in the best interests of the Partnership.
>
> The transaction is expected to close late in the first quarter or early in the second quarter of 2021 subject to the approval by the holders of a majority of outstanding common units of TCP and customary regulatory approvals. Upon closing, TCP will be wholly-owned by TC Energy and will cease to be a publicly-held master limited partnership. . . .
>
> Evercore is acting as exclusive financial advisor and Kirkland & Ellis LLP is acting as legal advisor to the conflicts committee.

***The Proxy Statement Omits Material Information, Rendering It False and Misleading***

23. Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction.

24. As set forth below, the Proxy Statement omits material information.

25. First, the Proxy Statement omits material information regarding the Partnership's and TC Energy's financial projections.

26. With respect to the Partnership's financial projections, the Proxy Statement fails to disclose: (i) all line items used to calculate comparable EBITDA and comparable FGFO; (ii) projected cash flows; and (iii) a reconciliation of all non-GAAP to GAAP metrics.

27. With respect to TC Energy's financial projections, the Proxy Statement fails to disclose: (i) all line items used to calculate comparable EBITDA and comparable FGFO; (ii) projected cash flows; and (iii) a reconciliation of all non-GAAP to GAAP metrics.

28. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

29. Second, the Proxy Statement omits material information regarding the analyses performed by the Partnership's financial advisor, Evercore Group L.L.C. ("Evercore").

30. With respect to Evercore's TC PipeLines Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) the cash flows used in the analysis and all underlying line items; (ii) the individual inputs and assumptions underlying the discount rates and perpetuity growth rates used in the analysis; (iii) the terminal values used in the analysis; and (iv) Evercore's basis for using multiples of 8.5x to 10.5x.

31. With respect to Evercore's TC PipeLines Discounted Distributions Analysis, the Proxy Statement fails to disclose the individual inputs and assumptions underlying the terminal yield range and discount rates used in the analysis.

32. With respect to Evercore's TC PipeLines Peer Group Trading Analysis, the Proxy Statement fails to disclose the individual multiples and metrics for the companies observed in the analysis.

33. With respect to Evercore's Precedent M&A Transactions Analysis, the Proxy Statement fails to disclose the individual multiples and metrics for the transactions observed in the analysis.

34. With respect to Evercore's TC Energy Discounted Distributions Analysis, the Proxy Statement fails to disclose the individual inputs and assumptions underlying the terminal yield range and discount rates used in the analysis.

35. With respect to Evercore's TC Energy Peer Group Trading Analysis, the Proxy Statement fails to disclose the individual multiples and metrics for the companies observed in the analysis.

36. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

37. The omission of the above-referenced material information renders the Proxy Statement false and misleading.

38. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Partnership's unitholders.

## COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and TC PipeLines**

39. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

40. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. TC PipeLines is liable as the issuer of these statements.

41. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Partnership, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

42. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

43. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

44. The Proxy Statement is an essential link in causing plaintiff to approve the Proposed Transaction.

45. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

46. Because of the false and misleading statements in the Proxy Statement, plaintiff is threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants

47. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

48. The Individual Defendants acted as controlling persons of TC PipeLines within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or Board members and participation in and/or awareness of the Partnership's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Partnership, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

49. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

50. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Partnership, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

51. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

52. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: January 29, 2021                    **RIGRODSKY LAW, P.A.**

                                           By:  */s/ Gina M. Serra*
                                                Seth D. Rigrodsky (#3147)
                                                Gina M. Serra (#5387)
                                                300 Delaware Avenue, Suite 210
                                                Wilmington, DE 19801
                                                Telephone: (302) 295-5310
                                                Email: sdr@rl-legal.com
                                                Email: gms@rl-legal.com

                                                *Attorneys for Plaintiff*